We'll hear the next case on the calendar, Jacobson v. Kings County Democratic County and Adelman. Chief Judge Katzmann, may it please the Court, my name is Ravi Batra. Along with Todd Sherman, I represent the former Justice Laura Jacobson. In incorporating our briefs, we respectfully request that the Court reverse and send the case back to continue and ultimately face a federal jury. The Court below identified a gating issue and got it wrong. The gating issue was that the mandatory rules that were violated, which in this motion of dismissal have to be accepted as true, given the documentary evidence that is attached to the complaint, the Court below said there were internal rules. And from there, the case ended. And that's footnote four of the Court below. And that's wrong, because Exhibit 8 of the complaint, Procedure 4 of the Kings County Democratic Party, says that they will not endorse or nominate anyone who has not been found recommended by their judicial screening panel. Can I ask you this? Surely you are. I understand that argument. The complaints alleges, and I'm quoting, that to have any practical chance at being elected to the Supreme Court within Kings County, the support and approval of the KCDCC is necessary. But then it also says, and if I can quote, unless a candidate decides to forego the KCDCC process and run a slate of independent judicial delegates pledged to nominate, second, and vote for such candidate, doesn't that, you know, what I've just quoted, doesn't that seem to suggest that candidates can, in fact, be nominated, even if they don't have the endorsement, if they can run a slate of judicial candidates? Indeed, Your Honor, but that's not what our case is about. Our case isn't about what Lopez Torres already said cannot be a case. So, and we made that up front in the complaint. We said we recognize Justice Scalia's decision that, you know, politics can be stupid and constitutional. It's fine. Our case isn't about the executive committee discretionarily choosing or not choosing to endorse and then nominate. Our case is that if the county committee, and they weren't obligated to do this, Queens, for example, doesn't do it. But in Brooklyn, they decided to look good to the public, to limit themselves, and to create this organ called the Judicial Screening Panel, which used to exist before but in advisory capacity. In 2003, because of the events that occurred, Kings County Democratic Party, to regain trust, the public trust, decided to make their screening panel mandatory. And it is that mandatory component because if you have, as Justice Kavanaugh just guided in the Manhattan Community Access case versus Hellner, that there's a state action doctrine, and we're required to meet one prong. We meet two. One is the traditional election function, which is exclusive to the state, and the second is a joint action between the state and the private party. We actually meet two prongs instead of one. And here, the Kings County Democratic Party itself, by its own rules in 2003, in its Exhibit A of the complaint, it starts with Procedure 1 and Procedure 4, it says they cannot and will not endorse or nominate anyone who has not been recommended by the Judicial Screening Panel, which therefore makes the Judicial Screening Panel a state actor. State law doesn't impose that on them. They impose that on themselves. Indeed. I just said that. I agree with you, Your Honor. How does that convert them to a state actor, then? The state law just sets up the process for the selection of delegates and the meeting of the convention. The delegates are selected through an election process, and there's designating petitions that are distributed throughout the respective areas, and the delegates then assemble. The fact that the delegates may choose among themselves to bind themselves to a particular screening process, whether it's a political party or another independent party, as has occurred on a few occasions with which I'm familiar, they're perfectly free to do that, aren't they? It's not a function of state law. It's a function of the political process. As the Morse case said, Your Honor, when the state law permits local parties more freedom, that is actually a grant of even more power, state power. Let me ask you this. If I'm a delegate to the 7th Judicial District in upstate New York for the Supreme Court designating convention, and I say, I'm going to bind myself to what my county chair says, I suspect that's not unusual, Mr. Batra, and you and I both know that. So does that then make me a state actor? And does it make the county chair a state actor? Well, let me parse this a little bit, if you will, to the case at hand, which is certainly the county committee, when it's acting and convening a judicial screening panel to nominate Supreme Court justices, they are a state actor. Now, the only question really, and that's the gating issue, is the rules of the judicial screening panel, which we've alleged were violated and they were mandatory. Are those rules part of the state action? And I submit to Your Honor, and that's where the Court got it wrong below. Exhibit 8, Procedure 4, takes it out of discretion. They, Kings County says, we will not. They are saying, Kings County is a state actor. Even if it's mandatory, if it's a mandatory internal rule that's not dictated by state law, they're still okay. Just because it's a mandatory rule, if it's internal rule, it's still not state action. It's a private mandatory rule, right? I don't agree with that, Your Honor. In fact, a surrogate of this Court said so, because if it's the internal rule. In Rockefeller, we specifically distinguished that case. That case involved a state signature requirement. We said that's state action, because the State mandates this. But said this is different from an internal party rule. But this is not internal party rules, because it's not about whether a person within What State law mandates, what is it, Section 4 of the, of what they decided to do? What State law mandates that they follow that particular procedure? No. You just said they did it on their own. They did. But the fact that the State gives them that power to create whichever procedures they want to create as part of the State If they make that theory, then everything is state action, because the State broadly gives them power. Then any individual political decision they make as a party then becomes, all of it becomes state action. No, Your Honor. It doesn't, because that's not our argument. Our argument is very simple. Any violation of an internal rule would become state action under your argument. No. Only the internal rules that are directly related to, as Justice Kavanaugh said, the traditional exclusive function of the State, which is to hold elections for governmental officers. That's what we're talking about. It is a very rare situation. It's a narrow cut. This is not a delegation to the screening committee. The screening committee plays a role, but they're not, the internal rule doesn't say, and the screening committee shall be the delegates as required under 6-124 of the New York election law. It doesn't substitute the screening committee somehow and mandate that they be the delegates. Nor does state law allow that. So you're bootstrapping yourself backwards, it seems. Well, let me try to save myself, if I may, Judge Wesley. Do your best. This is not a delegate issue. The question is the county committee as a whole decided that when they're performing a traditional election function, which is a public function, which is granted to them by the State, that they are going to share that power, which was given to them and be a State actor in that function, they're going to share that power with a judicial screening panel. They didn't have to, but they did. And they wrote it down. It's Exhibit 8, Procedure 4, and it says, we will not endorse or nominate anyone to the judicial convention that delegates could even vote on. We will not put the menu together until the screening panel has recommended. And it is that action which gets us past the gating that makes the judicial screening panel part of the committee, the county committee, which therefore makes the violation of the rules have to pass constitutional muster. Thank you. Thank you. Thank you. May it please the Court, George Carpinello for the screening committee appellees, Your Honors. There are at least five reasons why this appeal should not succeed and that plaintiff fails to state a claim. First, there is no State action. As Mr. Batra has conceded, this is not a ballot access case. The plaintiff does not seek remedy with regard to the ballot, and clearly there's a dividing line in the case law between those cases where you're dealing with the internal affairs of a party which are clearly protected by the First Amendment and where the party steps over the line and performs a State function in nominating people to the ballot. He concedes this is not, that's not this case. Second, there's no constitutional requirement that any particular selection process be followed. As Mr. Batra concedes, the Kings County Democratic Committee could have done what they do in Queens, which is have no process at all. They could have, they could make a decision in a smoke-filled room as to who they want to nominate, and the chairman of the party could come out of the room and denigrate any candidate he or she wanted to denigrate. There would be no constitutional violation. He concedes that. What about the argument that it's illegal to violate mandatory rules that are adopted pursuant to statutory authority? Therefore, that's an argument against your qualified immunity argument. Well, I was going to get to qualified immunity. Let me first say that the violation, as we point out in our brief, the violation of a State rule, of a nonconstitutional rule does not constitute a 1983 violation. So even though the committee set up these rules, and even if you accept it's true that the screening committee may have violated one of these rules, most of which he actually misreads, if he violated one of those rules, that doesn't create a 1983 claim. With regard to qualified immunity, which is another reason, as Your Honors has pointed out in the case prior to ours, in order for him to get beyond the qualified immunity, he has to show that there's clear case law relating to the specifics of this case to demonstrate that there was a clear precedent that was violated. That's clearly not the case here, as he conceded in the court below, where he said this is a case of first impression. In addition to those reasons, there's no property interest. The plaintiff has no property interest in her position. And there's plenty of case law that says that. And also there's no class of one theory. She proceeds on a class of one claim. And the Supreme Court has indicated in Enquist that a public employee does not have a class of one claim. Now, zeroing down into each of these issues, getting back to the State action, there's numerous Supreme Court decisions that have held that a party in deciding how to run its internal affairs, and even in the nominating process, has a First Amendment right to develop its own procedures, and those cannot be mandated by the State. When the party steps over that line and is in the process of actually placing people in nomination on the ballot, and the State provides the party that position, at that point they may be a State actor. The screening committee is at least three steps removed from that. The screening committee does not nominate. The screening committee recommends. And the only provision in the rules is that the executive committee of the party cannot endorse a candidate that the screening committee has not found qualified or recommended. But the endorsement process, and numerous courts have said this, the endorsement process is not a State action. So even the act of the executive committee to endorse or not endorse in the committee is not State action. Clearly, the actions of the screening committee in recommending or not recommending cannot possibly be State action. And as I said before, there's no right to a particular process. Lopez-Torres makes it clear that the decision can be made in a smoke-filled room. If that's the case, the fact that the screening committee is alleged here to have not strictly followed the procedures cannot rise to a constitutional claim. With regard to the property interest, Pontero, Schwartz, Levine, Mr. Batra's own case, Bahl, all hold that there's no property right in her position. If there's no property right, there's no equal protection claim. And finally, once again, on the qualified immunity, I will mention that in the Novmosky v. Norris case that was decided one month ago today, 934 F. 3rd 200, this Court again emphasized that the principle, in order to avoid qualified immunity, the plaintiff must show that the principle violated was clearly established and it must be particularized to the facts of that case. If there are no further questions, I will rest on my brief. Thank you, Your Honor. Thank you. Thank you. Good morning, Your Honor. Edward Spiro for Kings County Democratic County Committee, as well as Frank Setio. Plaintiff's arguments confuse the Executive Committee's conduct surrounding endorsement of a judicial candidate with the electoral function performed by publicly elected delegates at the judicial convention. The Executive Committee's endorsement of a judicial candidate is an internal party function and not State action under this Court's decision in CRG and is protected First Amendment activity under Lopez-Torres. Well, under Lopez-Torres and some of the other cases, the State action question could be understood as this. Does the complaint or doesn't the complaint suggest that the committee effectively controls the nomination process for judges in Kings County? And isn't that enough? And why isn't that enough after the white primary cases to allege State action? Well, the white primary cases obviously involved class discrimination. But with regard to the Lopez-Torres case, Lopez-Torres was a case that was challenging the overall system for picking judges in Brooklyn. And, in fact, the Supreme Court upheld that system and said that it was constitutionally valid. So it was really not a case that addressed the State action argument, the State action issue, because the case itself was a frontal attack on the constitutionality of the nomination and judicial convention system in Brooklyn. CRG is a case of this Court which we submit actually is a clear guide path for deciding this matter. In CRG, the Court said that a party's decisions are not State action, except in the rare instance where the decision is an integral part of the election process. And in CRG, the Court pointed out what instances you might find there to be State action involving, in that case, the Kings County Republican Committee. There they said, well, if the county committee is functioning in picking who the nominee of the party is going to be in a special election, that constitutes, that could constitute State action. If the party is going to actually determine whether or not a non-party member can be a candidate, that may constitute State action. But following CRG's reasoning, here we're talking about the Democratic County Committee's endorsement decision, which is not an integral part of the electoral process. There's a judicial convention that is called. The delegates to the judicial convention are elected by the public in an election. At the convention, candidates for judgeships' names are placed into nomination. The delegates vote on those. If, in this case, Judge Jacobson wanted to have her name put in nomination, she was free to do so. As the Supreme Court pointed out in Lopez-Torres, if she wanted to go ahead and petition to get on the ballot, she was free to do so. So there was no impediment at all imposed on her ability to gain access to the ballot if she chose to do so. So we submit in line, consistent with CRG, consistent with Lopez-Torres, the decision of the district court was correctly decided and should be affirmed. Thank you, Your Honor. Thank you. Your Honor, I completely agree on one point with Mr. Spiro, that CRG is instructive, because if the rules, if the functionality of the judicial screening panel, its end product was only going to be about the internal workings of Kings County, then it was internal matters. However, if internal matters affect state, traditional state function exclusively done by the state, which is elections, and it was because they said so, and they said it was mandatory, Mr. Spiro just agreed, therefore what they did was state action, and if it's state action, it must pass constitutional muster. And to your point, Chief Judge, about the qualified immunity, if it's mandatory rules, there is no discretion. Discretion comes in when there is, you have some range of options. If it says thou shall not kill in the commandment, there is no wiggle room there. So those mandatory rules are mandatory, and hence qualified immunity doesn't apply. But going to Mr. Carpinello's point, and I just want to touch on a brief point because the hour is getting late, the reason I said, and everything has to be parsed here, and the facts are the facts, Justice Jacobson at the time withdrew her application, her candidacy under Rule 31B, in exchange for no breach of confidentiality, even though she complained there was already something taking place in her letter. That, therefore, took her out of running for endorsement or election or anything. So this entire conversation about delegates and if she could run a delegate slate is irrelevant. What we're coming to you for and the property right is a reputational capital. Other than life and death, all we have in between is our reputations. And if that's not a property right, I don't know what is. And this is a defamation case which is under equal protection, Class of 1, because for each of the rules violated, everybody else got treated fine in the same position. She got gotten with vindictive animus, as Justice Breyer said in his concurrence in OLEC, that this is an individualized, malicious act, and the reason it is actionable, Your Honors, is because Kings County decided, as Judge Hall below noted, the gating issue. Kings County decided that they were going to share their state power and they are a state actor because even Lopez Torres said Kings County Democratic Party is a state actor. They just got off because of the First Amendment excuse, and it's an appropriate excuse. But nobody said they weren't a state actor. So they are a state actor when they're doing this function. The Judicial Screening Panel was part of that function. Those mandatory rules could not be violated. They were violated, and hence we believe, Your Honors, that this court should reverse the court below. Can I ask you something? Surely, Your Honor. I understand what you're saying. Just to be clear, you bring the Class of 1 claim only as an OLEC claim. You're not bringing a LeClaire action. Am I correct? Your Honor, we're utilizing the OLEC analysis, but we go back to 1923, which started this Class of 1, because when you have state action, and it is a Class of 1, so you have the plaintiff versus the comparators, and they're identical in every relevant respect. It doesn't have to be their age, size, weight, but they're relevant for each rule. They're identical, and we have met the vindictive animus here, and we've identified that as well in the complaint. She cut the fees of some of the screeners. She ruled against a partner of Frank Settio, the county leader, in the Long Island College Hospital case when he sought relief. And that's the case that has taken a hospital and has become a half-a-billion-dollar boondoggle. Okay? So, as a result. What's the answer? I'm sorry? With respect to LeClaire. Your Honor, I would say that if it helps us, I'm adopting it. And if it doesn't, I'm going to defer to your — this panel, this particular panel, has enough wisdom way past me. So I'm just saying, on a motion to dismiss, the gating issue we met. And we would request, Your Honors, that when you do reverse, as we request you do, that you use language that shocks and stings political bosses from not playing with the one core exceptional — the only reason America is exceptional is judicial independence. And judicial independence isn't important when you're a candidate. It is really important when you're an incumbent. Because you can't even go politicking. So when the incumbent is left without a shield, without an advocacy, and they can be chilled, as Laura Jacobson was. You just heard about, you know, Albania and everything else. It's a slippery slope. Thank you.  Thank you. Thank you all for your arguments. The court will reserve decision.